UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| TIMOTHY GROCE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 3:13-CV-00709 |
| v. | ) | |
| | ) | |
| STEVE CANTRELL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 filed by Timothy Groce ("plaintiff"). The matter is before the Court on the motion to dismiss or for summary judgment filed by Steve Cantrell ("defendant"). As plaintiff did not file a response to the motion, the Court deems plaintiff has waived his opposition to the dispositive motion. *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd mem.* 577 F.2d 740 (6th Cir. 1978); E.D. TN. LR 7.2. For the following reasons, defendant's motion for summary judgment will be **GRANTED** and this action will be **DISMISSED**.

**I. Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "Summary judgment is proper if the evidence, taken in the light most favorable to

the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal quotations marks omitted). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

Summary judgment should not be disfavored and may be an appropriate avenue for the "just, speedy and inexpensive determination" of an action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

A district court cannot grant summary judgment simply because the non-moving party has not responded, but rather must, at a minimum, examine the motion to ensure that the moving party has met its initial burden. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Where no response to a summary judgment motion is filed, however, the court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). "Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted." *Id*. (internal quotation marks omitted). If that evidence supports the conclusion that no genuine issue of material fact exists, the court will

2

determine that the moving party has met its burden, and "judgment shall be rendered forthwith." *Id*. (alteration omitted).

I. BACKGROUND

Plaintiff filed this lawsuit as an inmate at the Morgan County Correctional Complex ("MCCX") (Doc. 1 p. 2). Defendant is the chaplain at MCCX (*Id.* at 3). The Court has previously summarized the allegations of plaintiff's complaint as follows:

> According to the complaint, on July 31, 2013, plaintiff sent an information request to defendant in which he requested that "all the Wiccans on this compound be allowed to attend the Wiccan Feast on October 31, 2013, for the celebration of Samhain" (Doc. 2-1 p. 1). On September 24, 2013, defendant responded by stating "[y]ou know how this works—you need to decide what you want to eat (menu)[,] get pricing from the vendor, submit withdrawals, I must have all withdrawals in by 10/14 so a check can be requested. You must also give me a list of names of Wiccan inmates who will be attending" (*Id.*). On October 3, 2013, plaintiff sent another inmate information request to defendant in which he stated in pertinent part:
>
>> I'm on pending [protective custody] back here in Unit 25, I would still like to pay for my part of the feast for Samhain of 2013 - October 31st. Talk to A.P. or John Sweat's celly. His name is John also. He's in Unit 14. He has all of the details on what we would like to order. Tell me how much to make the withdrawal out for and I will.
>
> (*Id.* at 2).
>
> On October 4, 2013, plaintiff sent another information request to defendant which states as follows:
>
>> I'm on pending investigation. Due to this I am sending you the cash withdrawal with my signature in the [a]mount of $20.00 to help pay

3

for the Samhain Wiccan Feast to be held on or around October 31, 2013. I don't know what vendor the other Wiccans are using, so I'm leaving that part filled in for Darnell's Market since that is the vendor we discussed. I respectively [sic] request that you ensure that I am able to participate. If this is not the vendor used, please notify me ASAP, in the event that I can change where the check is to be mailed.

(*Id.* at 3). Also on October 4, 2013, plaintiff submitted a signed trust fund account personal withdrawal request in which he requested that $20.00 be deducted from his account to be mailed to Darnell's Market for the Samhain Wiccan Feast (*Id.* at 4). On October 8, 2013, plaintiff submitted another information request asking defendant to respond to his withdrawal request as soon as possible (*Id.* at 5).

On October 13, 2013, defendant denied plaintiff's withdrawal request, stating "[n]o Wiccan feast has been scheduled" (*Id.* at 4). Also on October 13, 2013, defendant responded to plaintiff's October 8, 2013, information request by stating as follows:

> As I have explained to you—the Wiccan leadership has not asked for the feast nor made any preparations. Therefore, there will be no feast. I'm returning your withdrawal . . . . PS— I spoke with A.P. this morn. they are looking now at an alternate date for the feast. When [and] if they select a date, I will let you know so you can submit another withdrawal. Make sure this one is witnessed before you send it or I will not accept it.

(*Id.* at 5).

On October 10, 2013, plaintiff signed a grievance stating that defendant had informed plaintiff that, as no other Wiccans had requested a Samhain feast, defendant was not going to "take time out of his busy schedule" to make sure that plaintiff got the feast. Plaintiff also specifically alleged that the feast had been approved by a doctor for the

4

>Department of Corrections for the State of Tennessee ("TDOC") and that defendant's conduct violated TDOC policy 118.01 (*Id.* at 7–8). On October 18, 2013, a supervisor responded to plaintiff's grievance by stating that "[p]olicy 118.01 Section VI D. 1 states 'the chaplain shall schedule appropriate group worship and study opportunities to meet the needs of inmates.' The word 'Inmates' means more than one" (*Id.* at 9).
>
>On November 4, 2013, a grievance panel held a hearing on plaintiff's grievance (*Id.* at 12). The grievance panel concluded that plaintiff "need[ed] to follow the proper procedure to have his religious feast" and filed a response to plaintiff's grievance setting forth this conclusion (*Id.* at 11, 12). On November 5, 2013, the warden signed the grievance panel's November 4, 2013, response and indicated that he agreed with the response set forth therein (*Id.* at 11). On November 21, 2013, the TDOC Deputy Commissioner of Operations signed a memorandum stating that he concurred with the warden's response to plaintiff's grievance (*Id.* at 6).

[Doc. 36 p. 1–3].

In his complaint, plaintiff seeks the following relief: (1) a preliminary injunction under which he would be immediately transferred from MCCX; (2) a temporary restraining order preventing defendant or anyone associated with him from contacting plaintiff; (3) a declaratory judgment stating that defendant violated his first amendment rights; (4) a permanent injunction removing defendant from his position as chaplain and preventing defendant from ever having this title; and (5) a temporary restraining order preventing defendant from holding the job title of "chaplain" until the end of the lawsuit. [Doc. 2 p. 6]. Plaintiff is no longer incarcerated at MCCX [Docs. 11, 32, and 33].

Defendant has now filed a motion to dismiss and/or for summary judgment, as well as a memorandum and affidavit in support thereof. In this motion, defendant first

5

asserts that plaintiff's claims are now moot due to the fact that plaintiff is no longer in custody at MCCX. For the reasons set forth below, the Court finds that plaintiff's complaint does not set forth an actual case or controversy which would justify the Court providing plaintiff with the relief sought due to the fact that plaintiff is no longer incarcerated at MCCX and therefore does not reach the other issues set forth in defendant's motion to dismiss or for summary judgment.

## II. ANALYSIS

Plaintiff's complaint seeks only injunctive and/or declaratory relief based upon an alleged constitutional violation which occurred while plaintiff was incarcerated at MCCX. As it is undisputed that plaintiff is no longer incarcerated at MCCX, no genuine issue of material fact exists in this case and no actual case or controversy arising out of the allegations in the complaint exists at this time.

Specifically, even if the Court assumes that the denial of a Samhain meal to plaintiff on one occasion while he was incarcerated at MCCX as set forth in the complaint violated plaintiff's constitutional right(s), plaintiff cannot establish any real and immediate threat of injury arising from this act as it is not ongoing, nor does it have any continuing adverse effects. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (holding that past exposure to illegal conduct does not entitle a plaintiff to injunctive relief) (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974)); *see also Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) and *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (both holding that claims for injunctive and/or declaratory relief against prison officials are moot when inmate is no longer incarcerated at that facility). In other words,

the undisputed facts demonstrate that plaintiff cannot establish that defendant's alleged past violation of his constitutional right(s) establishes any real and immediate threat that defendant will violate plaintiff's constitutional right(s) in the future in light of the fact that plaintiff is no longer incarcerated at MCCX. As such, the undisputed facts establish that there is no actual case or controversy that would justify the Court providing plaintiff with the remedies sought.

## III. CONCLUSION

Accordingly, for the reasons set forth herein, the motion for summary judgment filed by defendant [Doc. 40] will be **GRANTED** and this action will be **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:

                                          s/ Thomas W. Phillips
                                        SENIOR UNITED STATES DISTRICT JUDGE